FILED
JAMES BONINI
CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO    2012 MAY 10  PM 12: 58

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST DIV. COLUMBUS

Angela M. Crone-Schierloh,
Jeffrey A. Davis,
Paul T. Gonter,
Earnest Johnson,
Patricia A. Kohl,
Gary D. Lanoux,
Jeffrey A. Milum,
Alan W. Moore,
Gaspare Pirrone,
Tim Schierloh,
individually and on behalf of
all others similarly situated,

      Plaintiffs,

v.

Timothy Hammock,
Victor DiGeronimo,
Mark A Totman,
Gary G Siesel,
Jefferson S Powell,
Wiliam P Igel,
Patrick L Sink,
Rick Dalton,
Dan Smith,
William Hefman,
Marsha Rinehart,
Guss Hess,
Stanley I Roediger,
Don Taggart,

DOES 1-10,
and DOES 11-20,

      Defendants.

2 : 12 cv 410

CIVIL ACTION NO. _____

JUDGE SMITH
MAGISTRATE JUDGE ABEL

## COMPLAINT

1.      The members of Local 18, International Union of Operating Engineers ("Local 18"), provided union labor to projects in the states of Ohio and Kentucky and are eligible for benefits in several ERISA employee benefit plans sponsored by Local 18, including the Ohio Operating Engineers Pension Plan ("Pension Plan") and the Ohio Operating Engineers Health and Welfare Plan ("H&W Plan") (the Pension Plan and H&W Plan are referred to collectively as the "Plans"). The terms of the collective bargaining agreements and the Pension Plan and H&W Plan require that employers pay, and participants receive credit for, a per-hour fringe benefit for each hour worked. The trustees of the Pension Plan, and the trustees of the H&W Plan, breached their fiduciary obligation to their respective plans by failing to collect fringe benefit contributions from employers.

2.      Plaintiffs therefore bring this class action lawsuit on behalf of the Pension Plan and H&W Plan against the trustees of both the Pension Plan and the H&W Plan under ERISA § 502(a)(2), 29 U.S.C. § 1132, to recoup the plan assets squandered by the trustees' failure to pursue claims for fringe contributions with the requisite prudence and diligence.

## JURISDICTION AND VENUE

3.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

4.      Venue is proper pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

5.      Angela M. Crone-Schierlo is a heavy equipment operator. She is a member of District 5, initiated October 1, 1998.

6.      Plaintiff Jeffrey A. Davis is a former organizer for Local 18 and currently a heavy equipment operator. He is a member of District 5, initiated on February 1, 2000.

7.      Paul T. Gonter is a heavy equipment operator. He is a member of District 6, initiated December 13, 1977.

8.      Earnest Johnson is a heavy equipment operator, now retired. He is a District 5 member, initiated July 19, 1988.

9.      Plaintiff Patricia A. Kohl is a former Local 18 apprenticeship program employee and heavy equipment operator, now retired. She is a District 6 member, initiated November 1, 1990.

10.     Gary D Lanoux is a heavy equipment operator. He is a member of District 5, initiated November 1, 2002.

11.     Jeffrey A. Milum was a 17 year employee of Local 18 as a business agent and a heavy equipment operator, now retired. He is a District 1 member, initiated June 10, 1980.

12.     Alan W. Moore is a union organizer and heavy equipment operator, now retired. He is a member of District 4, initiated October 1, 1998.

13.     Gaspare Pirrone is a heavy equipment operator. He is a member of District 2, initiated November 13, 1976.

14.     Tim Schierloh is a heavy equipment operator. He is a member of District 5, initiated June 21, 2008..

15.     Defendant Timothy Hammock is a trustee for the H&W Plan and the Pension Plan.

16.     Defendant Victor DiGeronimo is a trustee of the H&W Plan and Pension Plan.

17.     Defendant Mark A Totman is a trustee of the H&W Plan and the Pension Plan.

18.     Defendant Gary G Siesel is a trustee of the H&W Plan and the Pension Plan.

19.     Defendant Jefferson S Powell is a trustee of the H&W Plan.

20.     Defendant William P Igel is a trustee of the Pension Plan.

21.     Defendant Patrick Sink is a trustee of the H&W Plan and Pension Plan.

22.     Defendant Rick Dalton is a trustee of the H&W Plan and Pension Plan.

23.     Defendant Dan Smith is a trustee of the H&W Plan.

24.     Defendant William Hefman is a trustee of the H&W Plan.

25.     Defendant Marsha Rinehart is a trustee of the H&W Plan.

26.     Defendant Guy Hess is a trustee of the H&W Plan.

27.     Defendant Stanley I Roediger is a trustee of the H&W Plan and Pension Plan.

28.     Defendant Donald Taggart is a trustee of the H&W Plan.

29.     Does 1-10 are additional trustees of the Pension Plan.

30.     Does 11-20 are additional trustees of the H&W Plan.

## EMPLOYERS ARE REQUIRED TO MAKE FRINGE BENEFIT CONTRIBUTIONS

31.     Local 18 negotiated parent-body collective bargaining agreements with organizations representing employers of union labor. The majority of Local 18 work is performed for employers bound by the Ohio Highway Heavy Agreement ("OHHA CBA"). Another example of a parent-body CBA is the AGC of Ohio Building Agreement ("AGC CBA"). The operative versions of both are effective May 1, 2010 through April 30, 2013.

32.     The representative organization signs the parent-body CBA and its members are bound by the CBA terms. The OHHA CBA provides that "(a)ll members of the Labor Relations Division of the Ohio Contractors Association . . . shall be bound by all terms and conditions of this agreement." ¶ 3. *See* AGC CBA ¶ 6.

33.     One of those terms requires that "all operating engineer work will be performed by an Operating Engineer." ¶ 4. *See* AGC CBA ¶ 10.

34.     These parent-child CBAs obligated Employers to make fringe benefit payments for each hour worked.

4

35.     The OHHA CBA specifies the mandatory fringe benefit payment. That mandate "shall apply to all Employer members of the Labor Relations Division of the Ohio Contractors Association." ¶ 34. *See* AGC CBA ¶ 41.

36.     "Fringe benefits shall be paid at the following rates for all hours paid to each employee by the Employer under this agreement." ¶ 35. The rates are $5 for the Pension Plan and $6.66 for the H&W Plan. OHHA CBA ¶ 34; AGC CBA ¶ 43.

37.     If an Employer hires non-union labor to perform the work of an operating engineer, the Employer must "pay the first qualified registered applicant the applicable wages and fringe benefits from the first day of the violation." OHHA CBA ¶ 13.

## PENSION PLAN PARTICIPANTS' BENEFITS ARE BASED ON THE NUMBER OF HOURS WORKED

38.     The Pension Plan is required to credit each participant with the corresponding fringe benefit, raised from $5.00 to $5.50 as of May 1, 2012, for each hour worked.

39.     A participant must achieve five years of credited service to become vested in the plan. 1,000 hours of work in a credit service year earns a full year of credited service.

40.     Accordingly, a failure to credit a plan participant with the fringe benefit for each hour worked may result in that participant failing to vest in the plan.

41.     The amount of a participant's benefit is also derived from the employer contributions.

42.     The employer contributions on behalf of a participant are multiplied by a percentage to determine the monthly value of the pension benefit. For example, if the employer contribution on behalf of a plan participant in year X was $10,000, and the multiplier for that year was 2%, the monthly pension benefit accrued for that year of contributions would be $200.

43.     A failure to credit a participant with fringe benefits for hours worked thus reduces the value of that participant's benefit.

5

44.     The percentage multiplier of the employer contribution varies from year to year. The relevant multiplier for a contribution is the multiplier in effect when the contribution was made. For example, a 2012 contribution is subject to the multiplier in effect in 2012, regardless of when the participant draws the pension plan benefit.

45.     On information and belief, the multiplier percentage for a given year is determined by the plan administrators and trustees. In the last decade it has varied from a high of 3.80% through May of 2006 to a low of 1.75% after August of 2009. An employer contribution in August of 2009 was therefore worth half the monthly pension benefit of an equivalent contribution in May of 2006.

46.     The multiplier percentage is established by taking into account various factors, including the financial health of the Pension Plan.

## EMPLOYERS HAVE NOT MADE THE REQUIRED FRINGE BENEFIT CONTRIBUTIONS

47.     Many employers failed to make the required fringe benefits contributions to the Pension and H&W Plans.

48.     These failures were detailed on, among other documents, an "Employer Delinquency Report" prepared on a monthly basis by the fringe benefit office for each district of Local 18.

49.     The Employer Delinquency Report listed, for each employer, the date on which benefit payments were audited, the period of time which the audit reviewed, and both the amount of delinquent Pension and H&W fringe payments owed and collected. Multiple employers were listed on each report and, in some instances their delinquencies dated back years prior to the date of the reports.

50.     One example of an employer listing from a June, 2011 Employer Delinquency Report is Barone HD Boring Construction. The 2008 employer contributions of Barone were

6

audited in early 2009. Barone was more than $18,000 delinquent in fringe contributions, but as of 2011 only $424.23 had been recovered. Barone continued to employ Local 18 labor.

51.     Another example from a June, 2011 Employer Delinquency Report is Collinwood Shale Brick. Collinwood was audited three time, once in 2009 and twice in 2012, and found to be delinquent, in total, more than $57,000. Only $2,000 has been recovered.

52.     Many of these delinquencies are years old. For example, Curran Drilling Co. was found delinquent in 2003 and 2004 audits, yet the 2003 amount has not been fully repaid and the 2004 amount remains entirely uncollected. Another contractor, Dan Ray construction, was found delinquent in 1998 and 2000 audits. Again, the 1998 amount has not been fully repaid and the 2000 amount remains entirely uncollected.

53.     Local 18 also received reports of site visits prepared by union organizers. There reports would identify worksites where, in violation of the applicable CBA, non-union labor was employed. The penalty for such violations is to pay the applicable wages and fringe benefits to the first qualified union applicant. *See* OHHA CBA ¶ 13.

54.     The H&W Plan was shortchanged by Local 18, in respect to the Local's own employees. Local 18 paid only 1200 hours of fringe benefits for employees, regardless of how many hours the employees worked.

55.     Other CBA signatory employers attempted to avoid paying fringe contributions by bidding on jobs with non-union labor using a different corporate name, a tactic known as "double-breasting." The operations are, in fact, "alter egos." *See Trustees of the Detroit Carpenters Fringe Benefit Funds v. Industrial Contracting, LLC,* 581 F.3d 313 (6th Cir. 2009).

56.     One example of such conduct was Ford Development Corp., a Local 18 CBA signatory, which also bid with non-union labor under the name Trend Construction. In 2008, Ford worked on Milford Street improvement project. Trend employees were intermingled with Ford

7

employees on this single project. As a result, and as shown on certified payroll reports for the project, there were operating engineers working on the project for whom no fringe benefits were paid. This information was conveyed to Local 18 by Local 18 employees who visited work sites and collected payroll information.

## THE TRUSTEES OF THE PENSION PLAN AND THE H&W PLAN HAVE NOT DILIGENTLY ATTEMPTED TO COLLECT UNPAID FRINGE BENEFIT CONTRIBUTIONS

57.     The OHHA CBA provides that the "Employers . . . agree to be bound by the Agreements and Declarations of Trust, as amended, establishing the Pension Fund [and] Health and Welfare Plan." ¶ 34. *See* AGC CBA ¶ 42.

58.     The Ohio Operating Engineers Pension Fund Amended Agreement and Declaration of Trust ("Pension Plan Trust") states that the Trustees, at their direction or through a committee appointed by the Trustees, "shall have the power to demand, collect and receive Employer payments. . . to which the Trustee may be entitled." § 5.4. "They shall take such steps, including the institution and prosecution of . . . such legal or administrative proceedings as is determined to be in the best interest of the Fund for the purpose of collecting such payments, money and property." *Id.*

59.     The Ohio Operating Engineers Health and Welfare Plan Amended Agreement and Declaration of Trust ("H&W Trust") states that the Trustees, either directly or through a committee appointed by the Trustees, "shall have the power to demand, collect and receive Employer payments . . . to which the Trustees may be entitled." § 5.5. "They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as is determined to be in the best interest of the Fund for the purpose of collecting such payments, money and property." *Id.*

8

60.     Employers are required to post a bond to ensure payment of fringe benefits or, alternatively, make fringe contributions on a weekly basis. *See, e.g.*, OHHA CBA ¶ 41.

61.     The trustees of the Pension and H&W plans failed to enforce this bonding requirement and, as a result, were less able to recover delinquent contributions.

62.     A "Contractors Updated List" identified the bonding status of each employer, with a color code system to indicate whether the employer was "ok," "not signed," or "signed, no fringe."

63.     Nearly 30% of the employers were listed as "no fringe bond," as opposed to the CBA required condition of either posting a bond or paying on a weekly basis.

64.     All but one of the "no fringe bond" employers was color coded as "ok."

65.     The trustees' power to collect payments, backed by a bond or otherwise, was not subject to a grievance and arbitration requirement. *See, e.g.*, OHHA CBA ¶ 40.

66.     Raymond Orrand is the administrator for both the Pension and H&W Plans. As administrator, he would meet with the trustees at their quarterly meetings.

67.     Orrand was involved in the preparation of the Employer Delinquency Reports and Contractors Updated List.

68.     On information and belief, Orrand shared information about employer delinquencies and lack of bonding with the trustees at the trustee meetings.

69.     The trustees failed to exercise their authority to pursue delinquent contributions with the requisite prudence and diligence as plan fiduciaries.

70.     In many instances, the employer did not satisfy the delinquency yet the Fund failed to pursue any legal process to satisfy the debt.

71.     In other instances, the fund did file lawsuits to recover delinquencies. Some of these lawsuits were, however, settled for only a small percentage of the delinquency. In one instance Keim Concrete Pumping Services owed a $1,000,000 delinquency but the Funds settled for only $25,000.

Keim Concrete Pumping Services continues to operate as of the date of the filing of this complaint and has sufficient resources to satisfy a greater proportion, if not the entirety, of the $1,000,000 judgment. In another instance, a judgment was secured against Davis Custom in the late 1990s, but no attempt was ever made to collect.

72.     On information and belief, the trustees also failed to diligently seek recovery from employers operating alter egos with non-union labor.

73.     For example, in 2011, Local 18 reached an agreement with Ford Development Corp. in respect to the alter ego Trend Construction to use union-labor. The trustees of the Plans did not diligently attempt to recover the prior years of unpaid fringe benefits from Ford's operations of Trend as an alter-ego.

74.     The ability of the Funds to collect on these delinquencies was limited by the lack of bonding of delinquent employers. For example, Western Reserve Interiors was delinquent in contributions and failed to post a bond. When Western Reserve Interiors went out of business the Funds were unable to collect the delinquency. A review of the Employer Delinquency Reports shows that the vast majority of delinquent employers were unbonded. The trustees failed to ensure that the Funds took steps to enforce the bonding requirement.

75.     Failing to collect delinquent employer contributions also directly harmed Pension Plan participants. The Pension Plan's financial health was impaired. As a result, the employer contribution multiplier was reduced. This diminished the pension plan benefit for each participant earning contributions during the relevant period.

## CLASS ALLEGATIONS

76.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Fed. R. Civ. P 23(b)(1), (2) and (3).

77.     Class 1 is defined as: participants in the Pension Plan.

10

a.  The requirements of Rule 23(a) are satisfied for Class 2 because (1) as of 2010, there were approximately 16,000 participants in the Pension Plan; (2) there are common questions regarding the trustees' failure to exercise their fiduciary duties with the requisite prudence and diligence; (3) the claims of the named plaintiffs are representative of the class; and (4) plaintiffs with counsel will fairly and adequately protect the interests of the class.

b.  The requirements of Rule 23(b)(1)(B) are met because separate actions run the risk of inconsistent adjudications that would establish incompatible standards of conduct for the trustees.

c.  The requirements of Rule 23(b)(2) are met because the trustees' failure to pursue delinquent contributions has a common impact on the Plan and class members, and injunctive relief ordering that trustees pursue the delinquencies is appropriate to cure the harm to the Plans.

d.  The requirements of Rule 23(b)(3) are met because the common question of whether the trustees breached their fiduciary obligations predominates over any individual questions and a class action is superior to repeated individual actions litigating the same issues for the purpose of fairly and efficiently adjudicating this controversy.

78. Class 2 is defined as: participants in the H&W Plan.

a.  The requirements of Rule 23(a) are satisfied for Class 3 because (1) as of 2010, there were approximately 11,000 participants in the H&W Plan; (2) there are common questions regarding the trustees' failure to exercise their fiduciary duties with the requisite prudence and diligence; (3) the claims of the named plaintiffs are representative of the class; and (4) plaintiffs with counsel will fairly and adequately protect the interests of the class.

11

b.  The requirements of Rule 23(b)(1)(B) are met because separate actions run the risk of inconsistent adjudications that would establish incompatible standards of conduct for the trustees.

c.  The requirements of Rule 23(b)(2) are met because the trustees' failure to pursue delinquent contributions has a common impact on the Plan and class members, and injunctive relief ordering that trustees pursue the delinquencies is appropriate to cure the harm to the Plans.

d.  The requirements of Rule 23(b)(3) are met because the common question of whether the trustees breached their fiduciary obligations predominates over any individual questions and a class action is superior to repeated individual actions litigating the same issues for the purpose of fairly and efficiently adjudicating this controversy.

## COUNT 1

**ERISA § 502(a)(2) - Breach of Fiduciary Duty**
**All named Plaintiffs, on behalf of Class 1, against defendants Pension Plan Trustees**

79.  All named Plaintiffs, on behalf of Class 1, incorporate the preceding paragraphs by reference.

80.  Section 502(a)(2) allows a participant in a plan to bring a civil action for relief from a violation of ERISA § 409, 29 U.S.C. § 1109.

81.  ERISA § 409(a), 29 U.S.C. §1109(a), "Liability for Breach of Fiduciary Duty," provides, in pertinent part, that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by that title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

12

82.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

83.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under § 402(a)(1), 29 U.S.C. § 1102(a)(1), but also any other persons who in fact perform fiduciary functions. Thus a person is a fiduciary to the extent "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i)

84.     ERISA § 404(a), 29 U.S.C. § 1104(a). "Fiduciary Duties," provides, in pertinent part, that "a fiduciary shall discharge his duties . . . with the care, skill, prudence, and diligence under the circumstances that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."

85.     At all times relevant to this Complaint, the Pension Plan trustees were fiduciaries of the plan because they were so named in the Trust. Pension Plan Trust § 3.1.

86.     The trustees "have discretion to compromise or settle any claim or controversy in such manner as, in their best judgment, is in the best interest of the Fund." *Id.* at § 4.25.

87.     The Trustees, at their direction or through a committee appointed by the Trustees, "shall have the power to demand, collect and receive Employer payments. . . to which the Trustee may be entitled." *Id.* at § 5.4. "They shall take such steps, including the institution and prosecution of . . . such legal or administrative proceedings as is determined to be in the best interest of the Fund for the purpose of collecting such payments, money and property." *Id.*

13

88.     The Trustees, in their role as Fiduciaries for the Pension Plan, failed to exercise with reasonable diligence their power to "demand, collect and receive Employer payments," thereby depriving the Pension Plan of assets owed to the plan.

89.     They further failed to enforce the requirement that employers post a bond as security for payment of fringes. As a result, the Pension Plan was deprived of assets owed to the plan when employers failed to pay fringes.

## COUNT 2

### ERISA 502(a)(2) – Breach of Fiduciary Duty
### All named Plaintiffs, on behalf of Class 2, against defendants H&W Plan Trustees

90.     All named Plaintiffs, on behalf of Class 2, incorporate the preceding paragraphs by reference.

91.     At all times relevant to this Complaint, the H&W trustees were fiduciaries of the plan because they performed fiduciary functions. They "hold, manage and protect the Trust Fund and collect the income therefrom and contributions thereto." H&W Trust § 4.1.

92.     They "have the discretion to compromise or settle ay claim or controversy in such manner as, in their best judgment, is in the best interests of the Fund." *Id.* at § 4.25.

93.     The Trustees further have, either directly or through a committee appointed by the Trustees, "the power to demand, collect and receive Employer payments . . . to which the Trustees may be entitled." § 5.5. "They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as is determined to be in the best interest of the Fund for the purpose of collecting such payments, money and property." *Id.*

94.     The Trustees, in their role as Fiduciaries for the H&W Plan, failed to exercise with reasonable diligence their power to "demand, collect and receive Employer payments," thereby depriving the H&W Plan of assets owed to the plan.

14

95.     They further failed to enforce the requirement that employers post a bond as security for payment of fringes. As a result, the H&W Plan was deprived of assets owed to the plan when employers failed to pay fringes

## COUNT 3

**ERISA § 502(a)(2) – Prohibited Transactions**
**All named Plaintiffs and Classes 1 and 2 against all Trustees**

96.     All named Plaintiffs, on behalf of Classes 1 and 2, incorporate the preceding paragraphs by reference.

97.     ERISA § 406(b)(2), 29 U.S.C. § 1106, prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan.

98.     The Plans settled numerous claims against employers for delinquent contributions.

99.     In many instances, those claims, which constitute plan assets, were settled for a fraction of what was owed by the employer. One example, discussed earlier in the complaint, was the settlement of a $1,000,000 delinquency owed by Keim Concrete Pumping for a mere $25,000.

100.     On information and belief, the trustees were informed of this and other settlements by Ray Orrand, the administrator of the Plans, and Patrick Sink, business manager and chairman of the plans as well as a trustee of the Plans.

101.     On information and belief, the trustees did approve or ratify these settlements.

102.     These settlements constitute transactions, exchanging a plan asset in the form of a legal claim for delinquent contributions for cash.

103.     By settling the claims for a fraction of their worth, the trustees acted on behalf of the delinquent contractors whose interests are adverse to the plan.

**WHEREFORE,** Plaintiffs on their own behalf and on behalf of all others similarly situated respectfully request the following relief:

(a)     The Court enjoin the Pension Plan from failing to credit plan participants with the fringe benefit for each hour worked;

(b)     A declaration that the members of Class 1 be credited with the Pension Plan fringe benefit for each hour previously worked for which credit has not yet been given;

(c)     A declaration that the Trustees of the Pension and H&W Plans have breached their ERISA fiduciary duties to the Plans and their participants;

(d)     An order compelling the Trustees to make good to the Plans all losses to the Plan resulting from their breaches of their fiduciary duties;

(e)     The Trustees be found liable for the failure to exercise their fiduciary duties in an amount equal to the forgone contributions to the Plans, with prejudgment and postjudgment interest;

(f)     Reasonable attorney's fees and the costs of this litigation; and

(g)     Such other relief as this court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a jury on all issues so triable.

Dated: May 10, 2012

*Maria E Quinn*

Maria E. Quinn, OH Reg #0003758
Maria E. Quinn Co., L.P.A.
Chagrin Richmond Plaza
25550 Chagrin Boulevard, Suite 320
Beachwood, Ohio 44122
Telephone: 216-593-0910


Gregory Y. Porter, Esq. (*to be admitted pro hac vice*)
Gabriel Siegle, Esq. (*to be admitted pro hac vice*)
BAILEY & GLASSER LLP
910 17th Street, NW
Suite 800
Washington, DC 2006
Telephone: 202-463-2101
Facsimile: 202-463-2103
Email: gporter@baileyglasser.com