UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGELA M. CRONE-SCHIERLOH, *et al.*,

        Plaintiffs,

   v.                              Case No. 2:12-cv-410
                                      JUDGE SMITH
                                      Magistrate Judge Abel

TIMOTHY HAMMOCK, *et al.*,

        Defendants.

OPINION AND ORDER

       This matter is before the Court on Defendants Victor DiGeronimo, Mark Totman, Gary Siesel, Jefferson Powell, William Igel, Patrick Sink, Rick Dalton, Dan Smith, Marsha Rinehart, Stanley Roediger, and Don Taggart's (collectively "Defendants" or "the trustees"), Motion to Dismiss for Lack of Constitutional Standing (Doc. 22). This motion is briefed and ripe for disposition. For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss.

I.    BACKGROUND

       Plaintiffs, Angela Crone-Schierloh, Jeffrey Davis, Paul Gonter, Earnest Johnson, Patricia Kohl, Gary Lanoux, Jeffrey Milum, Alan Moore, Gaspare Pirrone, and Tim Schierloh, individually and on behalf of all others similarly situated, initiated this action against Defendants in May 2012, alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1002 *et seq.* ("ERISA").

       The following facts are set forth in Plaintiffs' Complaint. Plaintiffs are members of

Local 18, International Union of Operating Engineers ("Local 18").  The members of Local 18 provided union labor to projects in Ohio and Kentucky and are eligible for benefits under ERISA benefit plans, in accordance with collective bargaining agreements ("CBAs").  (Compl. at ¶¶ 1, 31-34).  Under the relevant ERISA governed defined benefit plans, including the Ohio Operating Engineers Pension Plan ("Pension Plan") and the Ohio Operating Engineers Health and Welfare Plan ("Health and Welfare Plan") (collectively "the Plans"), employers are obligated to pay, and participants must receive credit for, a per-hour fringe benefit for each hour worked by a participant.  (*Id.*).  Defendants are current or former trustees of the Plans, who Plaintiffs contend "breached their fiduciary obligation to their respective plans by failing to collect fringe benefit contributions from employers."  (*Id.*).

Plaintiffs allege that Defendants, as trustees of the Plans, were aware of delinquent contributions but failed to adequately pursue them as required of them under ERISA.  (*Id.* at ¶¶ 66-69).  Plaintiffs assert that employers failed to make fringe payments under the Plans, and Defendants allowed those balances owed to go unpaid or settled for an unreasonably low amount.  (*Id.* at ¶¶ 49-52, 71).  Additionally, Plaintiffs assert that Defendants violated the CBAs by allowing companies to employ non-union labor without paying the applicable penalty.  (*Id.* at ¶ 53).  Furthermore, "Local 18 paid only 1200 hours of fringe benefits for employees, regardless of how many hours the employees worked."  (*Id.* at ¶ 54).

In May 2012, Plaintiffs initiated this action, setting forth three claims.  Counts 1 and 2 of the Complaint allege that the trustees of the Pension Plan and the Health and Welfare Plan violated ERISA by breaching their fiduciary duties to the Plans' beneficiaries by failing to exercise with reasonable diligence their powers to "demand, collect and receive Employer

payments," depriving the Plans of assets.  Plaintiffs bring Counts 1 and 2 of the Complaint only under the authority of ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2).  Count 3 alleges that the trustees violated 29 U.S.C. § 1106, which prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan, by settling claims for delinquent employer contributions for a fraction of what was owed.  The Complaint's prayer for relief requests the following: a declaration that Defendants breached their fiduciary duties to the Plans and their participants, an order compelling Defendants "to make good to the Plan all losses to the Plan resulting from their breaches of their fiduciary duties", Defendants be found liable "for the failure to exercise their fiduciary duties in an amount equal to the forgone contributions to the Plans, with prejudgment and postjudgment interest, reasonable attorneys' fees and costs, and "[s]uch other relief as this court deems equitable and just."[1]  (Compl. at 16).

In November 2012, Defendants moved to dismiss Count 3 of the Complaint for failure to state a claim upon which relief can be granted.  On May 22, 2013, the Court granted Defendants' Partial Motion to Dismiss upon finding that Count 3 failed to state a claim upon which relief can be granted (Doc. 16).  Subsequently, Defendants' filed their Motion to Dismiss Plaintiffs' Complaint for Lack of Constitutional Standing, which is now ripe for disposition.

## II. STANDARD OF REVIEW

Defendants move for dismissal of the remaining claims against them, Counts 1 and 2,

---

[1] The Complaint also requests "the Court enjoin the Pension Plan from failing to credit plan participants with the fringe benefit for each hour worked;" and a "declaration that the members of Class 1 be credited with the Pension Plan fringe benefit for each hour previously worked for which credit has not yet been given[.]" *Id.* at 16.  However, these requests are unrelated to the claims against Defendants, the trustees of the Plans.

under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiffs lack constitutional standing to bring these claims.[2] Defendants' motion is properly analyzed under Rule 12(b)(1). *Ward v. Alt. Health Delivery Sys.*, 261 F.3d 624, 626 (6th Cir. 2001) ("standing is thought of as a 'jurisdictional' matter, and a plaintiff's lack of standing is said to deprive a court of jurisdiction.").

The jurisdiction of the federal courts is limited. Article III § 2 of the United States Constitution grants the federal courts jurisdiction only over specified "cases" or "controversies." Absent a live "case or controversy," a federal court has no subject matter jurisdiction and the case must be dismissed. This "case or controversy" requirement gives rise to the concept of standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992).

Because "federal courts . . . have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," a plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Thus, even where statutory standing pursuant to ERISA is satisfied, the elements of Article III must be met. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606-07 (6th Cir. 2007) (citing *Cent. States Se. & Sw. Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199 (2nd Cir. 2005)). Congress "cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Raines v. Byrd*, 521 U.S. 811, 820 n.3 (1997).

---

[2] For the purpose of their pending motion, Defendants do not challenge Plaintiffs' statutory standing to file suit under ERISA.

In order to establish constitutional standing, a plaintiff must demonstrate the following: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury. *Lujan*, 504 U.S. at 560-61; *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-103 (1998). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 532 U.S. at 103-104.

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move for dismissal when the court lacks subject matter jurisdiction. Where a defendant raises the issue of lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Moir*, 895 F.2d at 269. Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack on subject matter jurisdiction goes to whether the plaintiff has properly alleged a basis for subject matter jurisdiction, and the trial court takes the allegations of the complaint as true. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). A factual attack is a challenge to the factual existence of subject matter jurisdiction. No presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *Ritchie*, 15 F.3d at 598; *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Here, Defendants challenge the factual existence of subject matter jurisdiction.

**III.  DISCUSSION**

Defendants argue that Counts 1 and 2 of the Complaint should be dismissed because the benefits Plaintiffs receive under the pertinent benefit plans will not change, even if Plaintiffs are successful on every issue raised in the Complaint, and therefore Plaintiffs cannot meet the requirements of constitutional standing.  Plaintiffs argue that they have standing based on their own individualized injury resulting from Defendants' conduct, and that they have representational standing as plan participants, enabling them to sue on behalf of the Plans.

ERISA governs employee benefit plans and establishes both the obligations of plan fiduciaries and the remedies for any breach of those duties.  Under ERISA § 404, a fiduciary owes strict duties to a plan and its participants.  *See* 29 U.S.C. § 1104.  If a fiduciary breaches these duties, he is personally liable to compensate the plan for any losses resulting from his breach.  29 U.S.C. § 1109.  Under ERISA § 502(a)(2), plan participants, the Secretary of Labor, beneficiaries, and fiduciaries, may sue a plan fiduciary to enforce these duties.  29 U.S.C. § 1132(a)(2).  Section 502(a)(3) permits a plan participant, beneficiary, or fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Standing under § 502(a)(2) is a question of "statutory standing" not Article III standing.  *Bridges v. Am. Elec. Power Co., Inc.*, 498 F.3d 442, 444 (6th Cir. 2007).  Thus, the requirement of standing under § 502(a)(2) is separate from the requirement of constitutional standing to bring suit in federal court.

Parenthetically, the Court notes that demonstrating constitutional standing under §

502(a)(2) is arguably substantively different from demonstrating constitutional standing under § 502(a)(3). *See Loren*, 505 F.3d at 608-10 (stating that "[u]nder ERISA, the contours of the requisite injury-in-fact depend on whether Plaintiffs seek monetary or injunctive relief[,]" and that "Plaintiffs need not demonstrate individualized injury to proceed with their claims for injunctive relief under § 1132(a)(3)"); *but see Kendall v. Employees Retirement Plan of Avon Prods.*, 561 F.3d 112, 119–121 (2d Cir. 2009) (clarifying that a plaintiff seeking injunctive relief must still allege some injury or deprivation of a specific right arising from an alleged violation of fiduciary duty, rather than simply asserting a blanket claim for breach of fiduciary duty). Regardless, in this matter, it is undisputed that Plaintiffs' claims are brought exclusively under § 502(a)(2). Additionally, while Plaintiffs seek a declaration that the trustees have breached their fiduciary duties to the Plans and their participants, declaratory relief is not the type of equitable relief authorized under § 502(a)(3). And while Plaintiffs' prayer for relief includes a catch-all request for "such other relief as this court deems equitable and just," Plaintiffs' claims are effectively claims for monetary damages, not injunctive relief. Thus, *Loren's* analysis of § 502(a)(3) is not applicable here.

In view of the dual requirement for standing, the fact that the applicable ERISA statute, § 502(a)(2), authorizes a plan participant to bring suit against a plan fiduciary, and, thus, the plan participant has statutory standing, does not lead to the conclusion that constitutional standing requirements are met. *See Loren*, 505 F.3d at 608-09 ("Merely because Plaintiffs claim that they are suing on behalf of their respective ERISA plans does not change the fact that they must also establish individual standing"). The "'limits on judicial power imposed by Article III counsel against permitting participants or beneficiaries who have suffered no injury in fact from suing to

enforce ERISA fiduciary duties on behalf of the Plan.'" *Id.* (quoting *Harley v. Minn. Mining and Mfg. Co.*, 284 F.3d 901, 906-07 (8th Cir. 2002)). Thus, where the "'loss did not cause actual injury to [a participant's or beneficiary's] interest in [an ERISA] plan[,]'" there is no constitutional standing to bring a claim under § 502(a)(2). *Id.* (quoting *Harley*).

Plaintiffs argue that, regardless of whether they have any individual injury as a result of alleged misconduct by Defendants, they have representational standing to sue on behalf of the Plans, as recognized by statute. In support, Plaintiffs cite *Sprint Communications v. APCC Services*, 554 U.S. 269 (2008). Plaintiffs further argue that the cases that have considered the issue of representational standing of plan beneficiaries and participants, absent individual injury, were wrongly decided. These arguments are unpersuasive.

In *Sprint*, the Supreme Court of the United States made the following general observation regarding standing:

> [F]ederal courts routinely entertain suits which will result in relief for parties that are not themselves directly bringing suit. Trustees bring suits to benefit their trusts; guardians ad litem bring suits to benefit their wards; receivers bring suit to benefit their receiverships; assignees in bankruptcy bring suit to benefit bankrupt estates; executors bring suit to benefit testator estates; and so forth.

*Id.* at 287-88. Plaintiffs argue that this observation in *Sprint* should extend to the circumstances found in the case at bar. However, the Fourth Circuit Court of Appeals has rejected the idea that *Sprint* extends to suits brought against trustees by defined benefit pension plan participants on behalf of the pension plan, without alleging any individual injury. *See David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013) (finding that *Sprint* does not extend to suits brought by pension plan participants, not alleging individual injury, under ERISA). Furthermore, in a recent and well-reasoned decision, the United States District Court for the District of Columbia determined that

*Sprint* does not extend representational standing to a defined benefit plan participant. *See Fox v. McCormick*, --- F. Supp.2d --- , 2013 WL 6439128 (D.D.C. Dec. 9, 2013).

While the Supreme Court's above-quoted statement in *Sprint* appears on its face to be quite expansive, it has not been interpreted to allow defined benefit plan participants to sue on behalf of the pension plan, without alleging any individual injury. The Court therefore finds that *Loren* remains the controlling law on this issue in the Sixth Circuit. Accordingly, the Court rejects Plaintiffs' arguments that it has constitutional standing to bring claims under § 502(a)(2) on behalf of the Plans regardless of whether they allege individual injury as a result of Defendants' conduct.

The Court is also unpersuaded by Plaintiffs' contention that a decision in their favor will likely redress injury caused by Defendants' alleged misconduct. Plaintiffs allege that Defendants, acting as trustees of the Plans, failed to adequately pursue claims for delinquent employer contributions. As it relates to the Pension Plan, Plaintiffs assert that Defendants' alleged breach of their fiduciary duties injured them because their benefits are calculated by multiplying their respective employer contributions by a percentage, known as the "multiplier," the value of which is dependant on the financial health of the Pension Plan. Plaintiffs allege that Defendants' failure to adequately pursue claims has been detrimental to the health of the Pension Plan, resulting in a reduced multiplier and, consequently, injury to Plaintiffs in the form of a diminished value of their benefits. Plaintiffs do not assert that the Health and Welfare Plan has the same or similar multiplier framework for determining benefits. Consequently, Plaintiffs do not argue that their benefits under the Health and Welfare Plan have been, or will be, diminished due to Defendants' conduct. Moreover, Plaintiffs do not allege that Defendants' conduct

materially increases the risk that either of the Plans will default on their benefit obligations.

Defendants contend that Plaintiffs' arguments relating to the multiplier fail as a matter of law and fact.  Defendants argue that a change in the multiplier does not constitute a violation of ERISA as a matter of law, and changing the multiplier should not provide constitutional standing to assert a violation of ERISA as a matter of law.  Defendants further argue that Plaintiffs' reasoning as it relates to the impact of any misconduct by them is speculative, as they cannot show that any change in the multiplier is a function of any alleged misconduct by Defendants in relation to the collection of money from delinquent employers.  Additionally, Defendants argue that Plaintiffs cannot show that any recovery in this case will likely inure to the benefits of Plaintiffs.  Lastly, Defendants note that the District of Columbia District Court, in *Fox*, addressed this precise issue and resolved that a claim asserted by a defined benefit plan participant is too speculative to support standing if it relies upon the likelihood that the plan trustees will change, in their discretion, the benefit accrual rate, on the basis of a change in the funding of the plan.  *See id.* at *7 ("Trustee discretion in setting the Benefit Accrual Rate makes Plaintiffs' claims too speculative to support Article III standing.").  Because the Court agrees with Defendants' argument that Plaintiffs' reasoning is based on speculation, it finds that Plaintiffs cannot show constitutional standing.

The Pension Plan provides in pertinent part that a participant in the Pension Plan, such as each of the Plaintiffs, "will be entitled to a monthly benefit . . . in an amount equal to the sum of his monthly past service benefit (if any) plus his monthly future service benefit."  (Doc. 25-3 at 12).  The Pension Plan further provides that "a [p]articipant's monthly future service benefit shall be determined by multiplying Employer contributions (excluding supplemental

contributions) credited to the [p]articipant at the time of determination by a percentage determined in accordance with the following table[.]" *Id.* Based on this simple formula, a reduction in the multiplier results in a diminished pension benefit. Also, the multiplier is variable, and it has been adjusted numerous times over the years by the Pension Plan trustees. The identified table sets forth the percentage, or multiplier, to apply depending on the time frame. For example, for a participant retiring after May 1, 2006, the benefit is calculated by multiplying all non-supplemental employee contributions earned prior to May 1, 2006, but after August 1, 1999, by 3.8 percent, all such contributions earned between May 1, 2006, and August 1, 2009, by 3.3 percent, and all such contributions after August 1, 2009, by 1.75 percent. On August 1, 2012, the multiplier was increased to 1.9. Even though the multiplier is variable, Plaintiffs do not dispute that any decision as to whether the multiplier is adjusted is a matter within the sound discretion of the Pension Plan trustees.

According to Plaintiffs, contribution levels and the amount of the multiplier are intertwined, and an increase in non-benefit accruing contributions results in an increased multiplier just as a decrease in non-benefit accruing contributions results in a decreased multiplier. In support, Plaintiffs cite reports submitted to the trustees of the Pension Plan by an actuarial consultant, the Segal Company. These reports show that, on more than one occasion, the Segal Company recommended changes to the multiplier and Pension Plan contribution levels. As set forth below, at least some of these recommendations were adopted by the Pension Plan trustees.

In 2004, the Segal Company advised the trustees of the Pension Plan that there were significant funding issues that required immediate attention. The Segal Company informed the

-11-

trustees that there were significant market value investment losses for the Plan in the prior two years, and that the "cost associated with benefits accruing under the current benefit multiplier (3.8% of contributions) exceeds corresponding contribution income (i.e., the multiplier is not sustainable on a long-term basis)." (Doc. 25-6). In view of the funding issues, the Segal Company outlined numerous changes that could be made to alleviate the financial strain on the Pension Plan, including reducing the benefit multiplier for future contributions, and instituting an additional contribution rate that is not subject to benefit accruals. The Segal Company advised the trustees to "adopt any combination of the above changes that would total" a specified target dollar amount. *Id.* While it is unclear from the record what if any changes were made as a result of this recommendation, it is clear that the multiplier was not changed, as it remained the same from 1999 until 2006.

In 2006, the Segal Company analyzed the financial position of the Pension Plan and submitted a report to the trustees of the plan outlining possible solutions to improve the funding of the plan, including reducing the benefit multiplier for future accruals and/or instituting an additional contribution rate not subject to benefit accruals. This report recommended reducing the multiplier from 3.8% to 3.3% and increasing supplemental contributions in three phases over three years. The trustees of the Pension Plan adopted the recommendation of the report in an effort to improve the funding of the plan.

In 2009, the Segal Company informed the Pension Plan trustees that the plan "is projected to be in critical status . . . due to a projected funding deficiency." (Doc. 25-9). The actuary proposed decreasing the benefit multiplier to 1.75% and increasing the supplemental contribution rate. The trustees approved and adopted this proposal.

Based on the evidence submitted by Plaintiffs, it is clear that the Segal Company provides regular reports for the Pension Plan trustees, that there is regular communication between the trustees and the actuary regarding the financial health and status of the plan, and that the trustees have repeatedly taken action to address plan funding issues.  Furthermore, it is undisputed that recovery of delinquent contributions are not subject to benefit accruals and "act purely to increase plan assets."  (Pls.' Mem. in Opp. at 6).  It is also undisputed that changes to the multiplier impacts the funding of the Pension Plan.  In view of these circumstances, Plaintiffs reason that the financial health of the Pension Plan was impacted by the alleged misconduct of the trustees, that the multiplier was reduced as a result, and that recovery in this case will result in an increase in plan assets and consequently an increase in the multiplier, to the benefit of the Plaintiffs.

Plaintiffs' reasoning is faulty because it is based on speculation.  First, the actuary reports indicate that the primary reasons for the Pension Plan's funding problems were investment losses and the demographic characteristics of the participants in relation to the cost associated with benefits accruing under the benefit multiplier.  Second, while in a general sense the failure to collect unpaid contributions would necessarily impact, at least to some limited degree, the financial condition of the Pension Plan, there is no evidence that the amount of unpaid contributions was significant enough to have a bearing on the decisions to alter the multiplier.  Third, as demonstrated by the actuary reports and recommendations, there are a number of actions the trustees may take in view of changes in the financial condition of the Pension Plan.  Thus, it does not appear that delinquent employer contributions had any noticeable impact on the financial health of the Pension Plan insofar as the cited actuary reports made no reference to the

issue in explaining its recommendation for fixing the plan's financial problems by taking such action as altering the benefit multiplier.  And even if the delinquent employer contributions, and any recovery based on any breach of the trustees' fiduciary duties in relation to collecting the contributions, had or would have a noticeable impact on the financial condition of the Pension Plan, determining whether the multiplier will be altered, as a result of that impact, is purely speculative.  Ultimately, whether the multiplier is altered is a decision of discretionary judgment charged to the Pension Plan trustees, and it is therefore neither automatic nor guaranteed should the fund assets increase.  *See Fox*, *supra*.

Accordingly, the Court finds that Plaintiffs lack constitutional standing to bring their claims against Defendants for breach of fiduciary duties.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss for Lack of Constitutional Standing (Doc. 22).  Accordingly, Counts 1 and 2 of the Complaint are hereby **DISMISSED** for lack of subject matter jurisdiction.  Because Count 3 of the Complaint previously was dismissed, no claims remain pending in this matter.

The Clerk shall remove Document 22 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

    **IT IS SO ORDERED.**

       *s/ George C. Smith*
       **GEORGE C. SMITH, JUDGE**
       **UNITED STATES DISTRICT COURT**